Coffin v. State.

## J. H. and HENRY COFFIN v. THE STATE.

COAL OIL. *Inspection of same.* Coal oil and other illuminating fluids manufactured or offered for sale in this State are subject to inspection under the acts of the 24th of March, 1875, and the 22d of March, 1877, and to sell said fluids or oils in this State without inspection is a misdemeanor, whether sold for consumption in this State or elsewhere.

### FROM SHELBY.

Appeal from the Criminal Court of Shelby county. J. E. R. RAY, J.

HUMES & POSTON for plaintiffs in error.

URIAH W. MILLER and WM. H. CARROLL for defendants in error.

McFARLAND, J., delivered the opinion of the court.

The record presents two indictments against the defendants below. The first for refusing to permit certain coal oil, and other fluids used for illuminating purposes, to be inspected by the inspector for the city of Memphis, the other for selling said oils and fluids without inspection.

The case involves the construction of the acts relating to the inspection of illuminating oils and fluids. The act approved 24th of March, 1875, provides that the Governor shall appoint for each city in the State, with a population of one thousand and over, an inspector of coal oil, carbon oil, petroleum oil, kerosene oil, gasoline, or any other product of petroleum used for illuminating or burning fluids which may be manufactured or offered for sale in the State.

The second section makes it the duty of the inspector, "when called upon for that purpose by the owner, manufacturer, or dealer of any of said illuminating oils or fluids, promptly to inspect and guage the same within the city or town for which he is appointed." The manner of the test is specially pointed out, and all such oils that ignite or burn at a less temperature than 120 degrees Farenheit are to be rejected. Certain brands are to be affixed to the packages.

Section four enacts "that if any person, manufacturer or dealer, shall sell to any person whatever in the State any of said illuminating oils or fluids before first having the same inspected as provided in the act,

he shall, on conviction, be fined a sum not exceeding three hundred dollars," etc.   The act also provides for certain fees to inspector to be paid by the owner.

The foregoing act was amended by the act approved March 22, 1877.   The amendments are, in many respects, not material to the present question.

The second section of the former act is amended so as to read, "that it shall be the duty of the inspector* promptly to inspect or test and guage all illuminating oils or fluids which are subject to inspection, as provided in the act, within the city or county for which he is appointed;" and it is made a misdemeanor for any dealer or manufacturer to refuse to admit the inspector to his premises for the purposes of inspection, or to obstruct him in the discharge of his duties.

This act also amends section four of the former act, and enacts that if any person, manufacturer or dealer, shall sell to any person whatever in the State any of said illuminating oils or fluids before first having the same inspected as provided in this act, he shall be guilty of a misdemeanor," etc.

The agreed facts show that the defendants are merchants, and dealers in coal oil and other illuminating fluids in Memphis, which they sell to merchants and consumers in the States of Mississippi, Arkansas, and other States, as well as in the State of Tennessee. That all oils sold for consumption in this State had been duly inspected, but the defendant refused to permit oils sold for consumption in the other States to be inspected.   And they admit that they sold certain

barrels of said oils in Shelby county to a party living in Mississippi to be consumed there without first having the same inspected as required by this act.

The question is, are they guilty of violating the above acts? For the defendant it is argued that the object of these statutes was to protect the consumers in the State from the dangers incident to the explosive character of the fluids when being used for burning or illuminating purposes; it being a mere police regulation, it could have had no other purpose than the protection of the consumers in this State. That it could not have been intended to protect the common carrier or warehouseman, because the act permits the transportation and sale of explosive and dangerous oils, provided such oils are not for illuminating purposes; and further, the act does not prohibit the bringing of such illuminating fluids within this State, nor is it made an offense to store the same here; that the offense consists in selling the same without inspection.

It is further agreed that although the act in terms says that it shall be a misdemeanor to sell to any person whatever in this State without inspection, that this must be construed to sell for consumption in this State, inasmuch as a sale for consumption in another State would in no manner violate the policy of the act, which is for consumers in this State. That it could not have been intended to protect purchasers and consumers in other States, because it may be perfectly lawful in those States to sell oil that this act does not allow to be sold here. This act rejects all

illuminating oils that ignite at a less degree of heat than 120 degrees Farenheit, whereas it is said in Mississippi the standard is 100 degrees, fixed by an act of Congress. So that consumers in that State may purchase from dealers outside of Tennessee without the inspection and brand required by our act. And to require our wholesale merchants to incur the expense of the inspection and brand on oils sold for consumption in that State, would be simply to require them to incur that much unnecessary expense, and give the foreign merchant the advantage over them, while the purchaser and consumer in this State are in no manner protected or benefitted. In other words, the spirit of the act is not violated so long as the people and consumers in this State are not subjected to the danger arising from the use of the condemned illuminating oils.

This argument is certainly plausible, and such a construction as would seem to carry out what may be fairly assumed to be the leading objects had in view, but we have been unable to avoid the force of the positive letter of the Statute. It is made the duty of the inspector, by the acts of 1877, promptly to inspect "all illuminating oils or fluids subject to inspection by this act," and it is made a misdemeanor for the owner to refuse him admission to his premises for the purpose, or to obstruct him in the discharge of his duties. This implies that it is the duty of the inspector to proceed at once, without waiting until the owner or dealer negotiates sales.

This is made more manifest by referring to the

change made by the latter act in the act of 1875. That act made it the duty of the inspector to inspect when called upon for that purpose by the owner or dealer. The latter act requires him to inspect promptly without waiting to be called upon for that purpose, and the owner or dealer is forbidden to resist him. It is his duty to proceed at once; he must of necessity inspect all oils and fluids kept for sale for illuminating purposes, because it would be impossible to determine which package should be inspected and which omitted, as it could not be known in advance which were to be sold to residents and which to non-residents.

Again, the language is, it is the duty of the inspector promptly to inspect all illuminating oils, etc., " subject to inspection by the act." It is argued that this implies that there are some illuminating oils and fluids not subject to inspection by the act; if this be conceded, it is still not easy to reach the conclusion that the illuminating oils and fluids not subject to inspection are those intended for sale out of the State. There is no indication of any such distinction in the act. But to determine what illuminating oils and fluids are subject to inspection by the act, we turn to the first section, by which the Governor is to appoint an inspector, etc., for all illuminating oils or fluids " manufactured or offered for sale in this State." So that if the illuminating fluid is manufactured in the State or offered for sale in the State, the inspector is appointed for the purpose of inspecting it, and it is therefore subject to inspection in the sense of the

second section of the act. Again, the fourth section makes it a misdemeanor to sell any of said fluids "to any person whatever in the State" without inspection.

These general terms include all sales in the State to any person. If it had been the purpose of the Legislature in this section to except sales to non-residents or for consumption out of the State, or to make this exception in the other clauses referred to, we should reasonably expect the exception to have been in some manner expressed, and not left altogether to inference.

We have considered the other parts of the act, which it is insisted bear upon the question, but they do not change our conclusion. The case referred to from the St. Louis Court of Appeals has been considered, but we have not regarded it as controling.

The judgment will be affirmed.

The other cases heard with this will take the same course.